COBB, Judge.
Lydia Diane Jones appeals from an order denying the Rule 32, Ala. R.Crim. P., petition she filed seeking relief from her convictions for trafficking in cannabis, violations of § 13A-12-231(1), Ala.Code 1975, and unlawful possession of cocaine, a violation of § 13A-12-212 Ala.Code 1975, and her sentences as a habitual felon to life in prison without the possibility of parole for the trafficking conviction and to 15 years’ imprisonment for the possession conviction.[1] We reverse and remand for further proceedings.
Jones was convicted based on her alleged involvement in illegal drug activity conducted at her apartment. Jones contended that the drugs found in her apartment belonged to her boyfriend, Louis “Ronnie” Cook, who was under surveillance and investigation by federal authorities regarding his involvement in a large-scale drug-trafficking conspiracy. Jones alleged that she permitted Cook to live at her apartment because she had moved into her parent’s home to care for her terminally ill father and that, in her absence and without her knowledge, Cook used her apartment to store large quantities of illegal drugs. However, after receiving a tip from a confidential informant, State authorities executed a search warrant on Jones’s apartment at a time when Jones was inside the apartment. Jones contended that she had only stopped by the residence to retrieve additional clothing and that she had no knowledge of the presence of illegal drugs in the apartment. Jones’s sole defense at trial was that the drugs belonged to Ronnie Cook and that assertion was made during her counsel’s opening statement to the jury. (Record on direct appeal at page R. 278, 292.) Cook intended to confirm Jones’s defense theory by testifying that he had placed the drugs in Jones’s apartment. However, he was not called as a witness because the State indicated that calling him as a witness would result in his being prosecuted on state drug charges. The jury returned verdicts of guilty and on appeal this Court *98 affirmed Jones’s convictions and sentences. Jones v. State, 836 So.2d 1003 (Ala.Crim.App.2001). The Alabama Supreme Court affirmed the judgment of this Court. Ex parte Jones, 839 So.2d 688 (Ala.2001). This Court issued the certificate of judgment on November 16, 2001.
Jones timely filed a Rule 32 petition on July 31, 2003. Among the claims presented, Jones claimed that trial counsel and appellate counsel, who were the same, were ineffective because counsel “harbored an acute, actual conflict of interests in their representation of Ms. Jones.” (C. 25.) In this regard Jones asserted that Cook intended to testify at her trial that the drugs belonged to him and not to Jones, but because Cook was ' “simultaneously represented” by Jones’s counsel, this evidence, which was exculpatory to her but inculpatory to Cook, was never presented to the jury on her behalf. (C. 25.)
On December 8, 2003, Jones filed an amended petition in which she presented a factual basis in support the above claim of ineffective assistance of counsel. (C. 55.) In pertinent part the allegations in the amended petition were as follows: Stephen Salter, Richard Thigpen, and Kenneth Moore represented Jones at trial and on appeal. Salter and Thigpen simultaneously represented Louis Cook in a federal drug-conspiracy prosecution “prior to, during and after” Jones’s trial. (C. 61.) Moore represented Cook in the criminal case in state court and represented Cook “in the face of possible state prosecution both before and during Ms. Jones’ trial.” (C. 61.) Cook initially paid Salter and Thigpen to represent Jones; however, that obligation was later assumed by her parents. “Cook pleaded guilty to federal drug conspiracy charges in both the Middle and Northern Districts of Alabama.” (Jones’s brief at footnote 2.) In exchange for his cooperation in prosecuting others involved in the conspiracy, Cook was to receive a lenient sentence. Cook’s sentencing was deferred until his cooperation could be evaluated. He was not sentenced until after Jones’s trial. The day Cook was to testify on behalf of Jones, the Jefferson County prosecutor advised him that he would be indicted on state drug charges if he testified for Jones. Counsel did not call Cook as a witness at Jones’s trial for fear of exposing him to state prosecution and harsher sentencing by the federal court. Among the various arguments presented by Jones, we note the following:
“Counsel failed to present evidence of [Cook’s] admissions to federal investigators that the drugs found in Ms. Jones’ apartment were his.”. (C. 64.);
“Counsel failed to present ... documentary evidence available at the time of Ms. Jones’ trial that Mr. Cook was actively involved in a state-wide drug operation in which he acquired, stashed, distributed, and sold marijuana in the Birmingham area and that he was being investigated by state and federal agents as a result of his drug activities.” (C. 65.);
“Despite emphasizing to the jury in both opening and closing arguments that Ms. Jones’ central defense was that the drugs found in her house were Ronnie Cook’s, trial counsel failed to elicit testimony of a single witness on direct examination to support this theory. Furthermore, counsel failed to investigate or present other evidence independent of testimony, that he had access to the house after Ms. Jones had moved out, was in fact using the house, or that the drugs were his, because Ms. Jones’ interest in a reasonable investigation diverged from counsel’s interest in protecting Mr. Cook.” (C. 66.); and
*99 “Trial counsel failed to call Louis Cook to testify at Ms. Jones’ trial. Mr. Cook would have testified that after Ms. Jones moved in with her parents, Mr. Cook began using Ms. Jones’ home to store drugs and conduct his drug-related business. Mr. Cook would have testified that the drugs seized during the raid belonged to him. There was no strategic basis for counsel not to call Mr. Cook. Counsel’s failure to call Mr. Cook as a witness was defective performance and prejudiced Ms. Jones.” (C. 70.)
On June 16, 2001, the State filed a motion to dismiss the Rule 32 petition. Regarding the above claims, the State argued that Jones’s claim of ineffective assistance of counsel based on alleged conflict of interest is procedurally barred because this claim was raised at trial when Salter informed the trial court of the conflict and requested permission to withdraw and the trial court denied the request. The State also asserted that the claim was without merit because at trial Jones stated that she did not want Cook to testify (R. 257-58), and because it is not clear if Cook would have testified once he understood the possible consequences. Moreover, according to the State, any omission in presenting evidence that Cook had admitted owning the drugs would not have exonerated Jones because the State’s evidence was that Jones assisted Cook in selling drugs. Thus, according to the State, Jones failed to establish prejudice.
Salter and Thigpen submitted a sworn answer to the amended petition as amicus curiae. In this document, Salter and Thig-pen testified that Cook had “effectively changed his mind about testifying in Ms. Jones’ case when confronted with threatened State prosecution” (C. 154), and that Jones “did not want to do anything that might hurt Mr. Cook in any way.” (C. 155.)
On April 23, 2004, the circuit court issued a written order dismissing the petition pursuant to Rules 32.2(a)(2), 32.2(a)(3), 32.2(a)(5), and 32.2(c) and because “[t]his court tried the case and finds that the petitioner has failed to meet her burden of proof regarding the alleged ineffective assistance of counsel,” and “this petition lacks merit.” (C. 5.)
Jones has reiterated her claim regarding counsel’s actual conflict of interest on appeal.
Where the facts have been disputed, “[t]he standard of review on appeal in a post conviction proceeding is whether the trial judge abused his discretion when he denied the petition. Ex parte Heaton, 542 So.2d 931 (Ala.1989).” Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992). However, if the circuit court’s ruling is correct for any reason, it will be affirmed on appeal. Hoobler v. State, 668 So.2d 905, 908-09 (Ala.Crim.App.1995). This Court does not agree that the procedural bars relied on by the circuit court are applicable. The petition was timely filed. Jones was represented by the same counsel at trial and on direct appeal; thus, this petition represents her first opportunity to present the claim of ineffective assistance of counsel based on an alleged conflict of interest. The trial court did not address the conflict-of-interest claim at trial but proceeded with the trial without squarely addressing the issue.
“ ‘... “[I]n order to establish a violation of the Sixth Amendment, ... [a defendant] must demonstrate that an actual conflict of interest adversely affected his lawyer’s performance.” Cuyler v. Sullivan, 446 U.S. [335] at 348, 100 S.Ct. [1708] at 1718 [(1980)]. Accord Williams v. State, 574 So.2d 876, 878 (Ala.Cr.App.1990). To prove that an actual conflict adversely affected his counsel’s performance, a defendant must make a factual *100 showing “that his counsel actively represented conflicting interests,” Cuyler v. Sullivan, 446 U.S. at 350, 100 S.Ct. at 1719, “ ‘and must demonstrate that the attorney “made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other.” ’ ” Barham v. United States, 724 F.2d 1529, 1532 (11th Cir.) (quoting United States v. Mers, 701 F.2d 1321, 1328 (11th Cir.1983)), cert. denied, 467 U.S. 1230, 104 S.Ct. 2687, 81 L.Ed.2d 882 (1984). Once a defendant makes a sufficient showing of an actual conflict that adversely affected counsel’s performance, prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) — i.e., “that, but for counsel’s unprofessional errors, the result of the proceeding would have been different” — is presumed. Strickland, 466 U.S. at 694, 692, 104 S.Ct. at 2068, 2067. See United States v. Winkle, 722 F.2d 605, 610 (10th Cir.1983); Williams v. State, 574 So.2d at 878.’ ”
Wynn v. State, 804 So.2d 1122, 1132 (Ala.Crim.App.2000).
It is clear from the following that counsel actively represented conflicting interests and that counsel chose “between possible alternative courses of action” “helpful to one client but harmful to the other.”
Wynn v. State, 804 So.2d at 1132.
“MOTION HEARING
“(In open court Tuesday, September 19, 2000, at 10:25 a.m.)(Defendant present. Counsel present.)(Jury not present.)
[[Image here]]
“THE COURT: Mr. Salter?
“MR. SALTER: Yes, sir, Judge. This morning I asked my partner, Richard Thigpen, to go by and see Mr. Cook at the jail just to see how he is doing. I have intentionally not had any contact with him probably in over two months. He has called a time or two concerning the progress of his federal case, which is coming up for sentencing later this week. But I have intentionally stayed away from talking to him because it has been sort of an awkward thing. I think it’s all right under certain circumstances for me to represent both Mr. Cook and Ms. Jones. In any event, this morning my partner, in talking to Mr. Cook — and I am sure he will say these things to the Court — he says that he was visited yesterday by the district attorney in this case and I guess the agent — I am not sure if the agent was present or not. But at any rate, at least by the deputy district attorney prosecuting this case. One, without contacting me, knowing him to be a represented defendant, it gives me some pause. But more importantly and more significantly, I understand the conversation included the prosecutor telling Mr. Cook that if, in fact, he testified that this marijuana was his, that he would intend to prosecute him here in the circuit court of Jefferson County. That raises some troubling implications. It finds me being a bit confused and a bit in somewhat of a conflict of sorts in my mind at least at this point about what to do, what I should do.
“You will recall the testimony of Agent McCune that a lady named Hattie French was involved with this investigation and at the scene of the search on the 10th of December. And Hattie French, as he described her, is assigned to the organized drug task force over at the federal building, as is Nick Myers, who was not involved in this particular search warrant, but involved in the investigation of Ronnie Cook and others and also associated with that task force. There is a plea agreement in place in connection with a pending federal charge due to Mr. Cook’s cooperation. He has already testified in a couple of *101 cases out of Montgomery and is due to testify some more. Part of that agreement is he will be prosecuted for the offenses in front of him on the table in federal court and no other charges would be brought. And the State is a part of that task force and in my view a part of that agreement. In connection with the contact by the prosecutor by a represented defendant, Ronnie Cook, I feel a need to move the Court for some kind of relief. I laundry-listed a couple of things. And I am not trying to be a pain in the you know what. But it troubles me to have a fellow come in here having been effectively threatened about what will happen if he testifies. And we represent to the Court that he will be truthful. He has told this to the State investigators before — he has had to tell all of the people he was supplying and providing and doing this that and the other with. To either move for a mistrial or move that the case be dismissed because of this contact and conduct and perhaps denying — intentionally denying — her a witness, although he says he is going to go ahead and testify this morning. Which brings up some 5th Amendment consideration — this thing is wrought with problems now — or to move or ask the Court for an order of immunity in the interest of justice in this case under the representations that I have made, as well as a partial remedy of the damage that has been done by contacting this person and threatening him in such a fashion.
“And, of course, lastly at this time I renew the motion that we brought to the Court’s attention — not a motion, but I think Mr. Thigpen mentioned to the Court on Monday and we do want to ask at this time if we haven’t asked before that the prosecution be ordered not to mention our names during the cross-examination of Mr. Cook if, in fact, Mr. Cook testifies.
“I don’t think it has any relevance. I think it is highly prejudicial and will crystalize the conflict that we broached with the Court earlier. I am also concerned about where to go now and what to do in connection with the handling of Mr. Cook. It seems like some relief is needed to remedy this situation.
“THE COURT: Mr. Roberts?
“MR. ROBERTS [prosecutor]: Judge, first as far as I knew, Ronnie Cook was just a witness in this case. I did not know when I visited him that he was represented by Mr. Salter. When I went to talk to him and asked him what his purpose of his testimony was going to be in this case, he said that he intended to say that the marijuana found was his. I looked at the file and the statute of limitations has not run on the file. I said, T would suggest that you talk to your attorney before you testify. Have you done that?’ He said, ‘Well, I am planning on talking to him this morning.’ I still didn’t know he was talking about Mr. Salter. I asked him to make sure, before he testified in a case and claimed drugs on the stand under oath, that he talk to his attorney and make sure that he understood what was going on and then let him advise him under his, you know, what an attorney is supposed to do. I think there is a huge conflict in this case. Again, when I went to visit him, I didn’t know that Mr. Salter was representing him at the time and really didn’t until after I left. He didn’t really tell me. He just said, T am planning on talking to my attorney this morning.’ Mr. Thigpen informed me later on that they actually were representing him. I don’t know in what capacity, if that’s in a federal case or whatever. But, of course, any federal plea agreement doesn’t bind our office. And certainly *102 anybody working with the sheriffs department doesn’t bind our office about anything that they have told him about whether or whether or not he will be prosecuted — which I doubt they have said- anything to that effect. But that wouldn’t bind our office as well.
“THE COURT: Of course, the subject of Mr. Jones [sic] came up yesterday. As I recall, Mr. Salter said in effect at some point that Mr. Jones [sic] was in jail, that he was available for interview, and told Mr. Roberts that hé might want to talk to Mr. Jones [sic]. I don’t recall any conversation at that point or any revelation at that point that, Mr. Salter, that you represented Mr. Jones [sic] or that Mr. Thigpen represented Mr. Jones [sic].
“MR. SALTER: It’s Mr. Cook. But I understand what Your Honor is saying.
“THE COURT: Cook. I’m sorry. It seems to me that the only issue at this point is whether or not you have a conflict, Mr. Salter, in this case.
“MR. SALTER: Well, that has been crystalized by this particular contact. Again, I say that by way of my feeling that I had not had a conflict or had not had a problem up until this point in regard to the handling of his case versus and/or including her case because what he has told — what he will tell this Court is what he has told the U.S. Attorney’s office and this task force of which the Jefferson County Sheriffs Department — and, therefore, the State of Alabama is a part or a partner in some fashion — is that during this period of tipie — I have a copy of his indictment here. It’s rather thick.-
“During this period of time and in particular 1998, he was distributing marijuana in large quantities in the Birmingham and Montgomery -area. And he would testify that he put that marijuana in this house at a time when she was not there, did not know that it was there. She came back the next day as you have heard some — well, you will hear testimony to the effect that she came back the next day. That is to say Mr. Cook is saying that the marijuana in this case is, in fact, his marijuana and that he will elaborate about the circumstances of how it physically came to be there. And my partner was asking me and saying that this was also conduct that is being considered and is considered and is a part of what they call the relevant conduct under these federal sentencing guidelines and all this new fancy language. I don’t know what to do.
“MR. ROBERTS: Judge, my concern is that if he had his own attorney that was not Mr. Salter, you have to wonder whether they would recommend that he testify in this case. But because of Mr. Salter’s representation of Ms. Jones, he is torn between — I think the conflict is apparent there, and I was not aware of it until after speaking with Mr. Cook.
“THE COURT: I am trying to get this clear in my own mind. Of course, Mr. Salter, you represent him in some other matters that may or may not be directly connected to this case, as I understand it; is that right?
“MR. SALTER: I represent him in other matters that directly bear on this ease in that it was during the time frame of the charge of conspiracy in federal court to which he has already entered a plea of guilty and to which I tried to indicate that his testimony' and the statements that he has made to the U.S. Attorney’s office and that whole task force ■ organization — I represent to the Court, he has been to two or three grand juries and has already testified about three times in Montgomery feder *103 al court against codefendants — was regarding his marijuana trafficking activities during the time frame that includes the time frame of this case.. And this stashing of the marijuana in this case is a part of that course of conduct. Which I am thinking out loud, if I were not myself and I were some independent lawyer and Ronnie Cook, Mr. Cook, asked me the question under the circumstances and told me the entire thing about his agreement with the government, with the State agents working as a part and parcel of it, I would feel that they would be barred or should be barred and/or [estopped from] prosecuting him under the circumstances because it’s clearly nothing but a vindictive action by the State to do so. It’s not in front of the Court. I can’t ask to dismiss something that hasn’t even been brought by the grand jury. But it seems to me that an indictment at this time and at this stage and in the context with what we are seeing happening would be violative of some constitutional protection that a citizen ought to have.
“THE COURT: I think the only issue for this Court at this point is whether or not you have a conflict between the interest of Mr. Cook and Ms. Jones. It seems to me that if you call Mr. Cook to the witness stand and he testifies that he was in possession of these items, in effect admitting a crime, I think, a judicial admission or confession in this case, which is obviously contrary to his legal interests.
“MR. SALTER: Yes, sir. And not calling him as a witness or at least attempting to do so on behalf of Ms. Jones when he has clearly exculpatory testimony is not in her best interest.
“THE COURT: I don’t think you can call him as a witness if you represent him and advise him to make such an admission in court in order to help your present client. Do you?
“MR. THIGPEN: Judge, if I may? I think that the case which Mr. Salter represents him on is — there would be no detriment made to him on that case or that situation.
“THE COURT: There would be an obvious problem if he confesses to this crime under oath. It seems to me that the State would not only have the right, but the obligation, to prosecute him under those circumstances.
“MR. ROBERTS: It wouldn’t be vindictive if he takes the stand under oath in front of a judge and claims that. The State being separate sovereign, I think we would be obligated to bring it.
“MR. SALTÉR: The State has known that this was — for discussion, the State has known that this was Mr. Cook’s marijuana from the period of time in which he came to cooperate with the Feds and the federal, authorities. They have obviously chosen not to bring charges and never intended to bring charges except now, if at all, if he were to come into this courtroom.
“THE COURT: I am not sure about all of that. But it’s pretty obvious to me that you have a conflict if you put him on the stand and he makes a judicial admission. You can’t represent both clients.
“MR. SALTER: That’s the problem that is before me. I apologize to the Court. I certainly didn’t intend or expect it to get to this posture.
“THE COURT: What I am saying is I don’t see how you can represent Ms. Jones, given your relationship with Mr. Cook.
“MR. SALTER: I guess I need to move for a mistrial. I ask the Court’s guidance about what I should do at this point. I feel constrained obviously to *104 have a witness who I understand is willing to give truthful, exculpatory testimony. I certainly don’t want to get Mr. Cook in any further jackpot. I don’t think it is right for the State to even keep that aura out there. But the State seems fervent that is their position, that they can even at this late date and under these dynamics and circumstances—
“THE COURT: Well, Mr. Cook would have to be advised that there certainly is the potential for further prosecution if he gives that testimony.
“MR. THIGPEN: Your Honor, I spoke with Mr. Cook this morning. And he had some questions about that. I told him that it is a legal possibility — it can happen legally that he can be prosecuted in this case if he gets on the stand and says that, in effect, That marijuana is mine. But I told him that my impression of things is that this is something that the State has known about since the time of his arrest and this was relevant conduct in his federal case and that it would be unlikely that he would be prosecuted if this was something that the State had known about and it was just part of basically his deal, that the State basically deferred the case to the Feds.
“MR. SALTER: But the State has clarified that was not their position.
“MR. THIGPEN: That was a clarification made yesterday due to the fact that we were going to call him as an exculpatory witness, which seems to me just pressure made at trial just to have this witness removed from the stand.
“THE COURT: I suppose if he understood that and waived his right—
“MR. SALTER: I think what I hear the Court saying — and I tend to agree — that perhaps a good lawyer and objective good lawyer would tell him, No, and heck no, don’t give yourself any exposure, the fact that you might can win that battle down the road.
“THE COURT: I would think that would be the normal thing to do.
“MR. SALTER: Yes, sir.
“MR. ROBERTS: And, Judge, as I say, that’s my problem with it. And to claim that this is some tactic by the State to throw this case into chaos — I mean, they understand the rules of conflict and calling their own client to the stand and having him present testimony. But because it was helpful to them, they neglected to maybe focus on that. But they have known certainly that they are representing both Ms. Jones and Mr. Cook for a long time and never represented that to the State to make sure whether we intended to prosecute him if he testified. I was not aware of that until yesterday. As soon as I learned of it, I made the witness aware of that. And now he has made his attorneys aware of it.
“MR. SALTER: I would say the State, through Hattie French, has known of my representation of Mr. Cook for probably over a year and a half.
“MR. ROBERTS: And he is using a broad term as ‘the State’ to I think include the federal people also.
“MR. SALTER: Hattie French is a deputy sheriff.
“MR. ROBERTS: I understand who she is.
“MR. SALTER: Maybe the remedy is unfortunate, to declare a mistrial and let Ms. Jones make arrangements for counsel that won’t — I began representing Mr. Cook first.
“MR. THIGPEN: Or, Judge, if we could have another option: to have a continuance and to clarify with the district attorney’s office their stance — whether he will or will not be prosecuted.
*105 “THE COURT: Mr. Salter, are you going to withdraw from this case because of this conflict?
“MR. SALTER: I don’t want to, but it would appear that it would be appropriate to under the circumstances as they have now come to coagulate or come together or crystalize. I didn’t anticipate any concern that the State under these circumstances would prosecute him because of all the things I said earlier. I won’t keep repeating them about the cooperation and who knew what, when, and where.”
(Record on direct appeal at pp. R. 146-61; emphasis added.)
The State rested its case and the matter was further discussed as follows:
“MOTION HEARING
“(The following proceedings were conducted outside the presence and hearing of the jurors.)
“THE COURT: Counselors, on reflection on this conflict issue, it seems to me that this witness, Mr. Cook, could waive any matters of conflict or his rights as well in this case if he chose to after he has been advised by the Court that, of course, he had the right not to testify and that those matters that he testifies about might be used against him and that also he has a right to consult counsel other than Mr. Salter before he made a decision about that issue.
“MR. SALTER: I think that he could waive it, Your Honor, technically and legally. But I think as you had said earlier and I echo the Court’s belief, in face of a threatened prosecution, I think a good lawyer would recommend that he not take any risk in creating exposure for himself, notwithstanding that he might feel that that threatened prosecution should not otherwise come and that if it came, whatever his thinking might be about the down-the-road prospects— I think erring on the side of caution, I think as we are supposed to do — I would think a lawyer would advise him not to take the stand. That’s what creates a problem in denying her a truly and exculpatory witness. And I can only say that I never contemplated there might even be a circumstance in which he would be subject to prosecution since he is being prosecuted in federal court and traditionally and as a matter of policy I know that the district attorney’s office throughout the State traditionally will defer in favor of federal prosecution, or in the worst-case scenario or for whatever reason it would be run concurrently. I had asked Mr. Brown to come up and give us an opportunity to maybe speak with him and see if we can get some clarification on the State’s posture. If, for example, he was not being threatened with prosecution, then clearly I would call him as a witness because I believe he is going to be telling the truth, the same truth he has been telling Hattie French and the people that work with that task force since he came to cooperate shortly after his indictment in October of last year.
“THE COURT: I will give you all a few minutes to discuss it with Mr. Brown if you like. We will take about 10 minutes, please.
“MR. SALTER: Thank you, Judge.”
(Record on direct appeal at pp. R. 164-66.)
The parties apparently conferred off the record and the trial then resumed.
“VOIR DIRE EXAMINATION
“LOUIS CALVIN COOK, JR.
“(In open court at 2:48 p.m.)
“(Defendant present. Counsel present. Louis Calvin Cook, Jr., present.)
*106 “(Jury not present.)
“THE COURT: State your name for the record, please, sir.
“WITNESS COOK: Louis Calvin Cook, Jr.
“THE COURT: And are you also known as Ronnie Cook?
“WITNESS COOK: Yes, sir.
“THE COURT: Mr. Cook, Mr. Salter has proffered your likely testimony in this case. Given what he has told me, the Court is obligated to ask you a few questions regarding your right to testify or not to testify in this case. I first want to know or inform you, of course, that you have the privilege or right not to testify. Do you understand that?
‘WITNESS COOK: Yes, sir.
“THE COURT: Do you also understand that anything you say in this proceeding under oath may be used against you?
“WITNESS COOK: Yes, sir.
“THE COURT: In other words, if you gave testimony — -I understand the offered testimony would be that the drugs found in this home were yours — that that testimony potentially could be used by the State to indict or prosecute you in the future. Do you understand that?
WITNESS COOK: Yes, sir.
“THE COURT: Do you wish to have counsel present to discuss this privilege and your rights and the consequences of testifying in this trial?
WITNESS COOK: I don’t have to because I already made a statement.
“THE COURT: Sir?
WITNESS COOK: I already made a statement, so I don’t really have to have a counsel.
“THE COURT: What do you mean you have ‘already made a statement’?
WITNESS COOK: I admitted that it was my drugs already.
“THE COURT: I know. But that’s not what we are talking about. That cannot be used in this trial. What I am saying is that if you testify in this trial, potentially it could be used against you in another proceeding.
“WITNESS COOK: (Nods.) I understand.
“THE COURT: You could be charged with another crime other than the crimes that you have already been charged with or convicted of. Do you understand that?
“WITNESS COOK: Yes, sir.
“THE COURT: Do you wish to talk to counsel about that?
WITNESS COOK: No, sir.
“THE COURT: I understand that according to Mr. Salter, he has represented you in other matters including the matter in which you are currently serving time. And that’s in federal prison; is that right?
WITNESS COOK: Yes, sir.
“THE COURT: Would you like to talk to other counsel other than Mr. Salter to make a decision about whether you are testifying or not?
WITNESS COOK: No, sir. I already talked to Mr. Thigpen, so I don’t have to talk to nobody else. I can answer the questions.
“THE COURT: I just want to make sure you understand your rights and then the consequences of testifying in this proceeding.
WITNESS COOK: I understand.
“THE COURT: Do you understand that?
“WITNESS COOK: Yes, sir.
“THE COURT: Do you have any questions about any of that?
“WITNESS COOK: No, sir.
*107 “THE COURT: Is it your desire to testify in this trial?
“WITNESS: Yes, sir.
“THE COURT: Knowing that it may be used against you in the future to prosecute you?
“WITNESS COOK: Yes, sir.
“THE COURT: All right.
“MR. SALTER: May I ask him some questions?
“THE COURT: Sure.
“VOIR DIRE EXAMINATION BY MR. SALTER:
“Q. Ronnie, part of the reason the judge is asking you the questions is because with our representing Diane [Jones] and also representing you, it is a little bit of an awkward situation for us to call you as a witness in the case with the State of Alabama sitting there saying that if you testify and testify to what we expect you to testify or testify along the lines that more or less the marijuana found in the house or the drugs found in that house were yours, that he is saying he intends to file or seek an indictment from a grand jury and hold you accountable in State court. In other words, whatever is going on in the federal court doesn’t necessarily bind the State of Alabama. That’s the position the State is taking. No lawyer wants to put his client in a jackpot or give them any risk of exposure. I certainly don’t want to do that in your case. That has been the dilemma we have been having. That is why I have not come to the jail to see you, because I didn’t want to say anything to you until we had this opportunity to speak with you with the Court present so that you could make an intelligent decision about that. She would love to have your testimony. I don’t want to see you get in trouble. And I am in a conflict. When the Court is asking you if you want to speak to a lawyer, I know that you know that I am your lawyer in the matter in federal court and I will try to do the best I can for you. But regarding this limited issue about where you testify in this case at this time under not a threat, but a representation that it will be lawful and legal and proper in the district attorney’s mind to file a separate charge if, in fact, you were to make an admission in saying that that marijuana was yours. And the Court is asking you do you want to talk with somebody else? For example, I think Ken Moore is down in Judge Garrett’s court. I am not trying to get you to spend money or engage another counsel. We have got a trial ongoing. But the judge is wanting to do everything possible to be sure that if you step out there and things become problematical for you, that you knew what you were doing. Many lawyers, many good lawyers would probably tell you, Don’t do it. That’s where it becomes a problem for me. She would love to have your testimony. I don’t want to get you in trouble. The advice I could give, I am sort of in an awkward spot, notwithstanding I expect if you were to testify, you would testify truthfully. But if that truthful testimony might expose you to some further criminal charge, that’s the bind that we are in. I mentioned Ken Moore’s name, Judge, because he has been represented by Mr. Moore in the past. In fact, Mr. Moore was going to participate in the trial of this case, but I think he got called out to trial by Judge Garrett.
THE COURT: I will add an addendum to that. If he wanted counsel, I would appoint counsel if that is a consideration since he is indigent. 1 just want to make sure he understands that your position is that quite frankly you can’t represent both of them for the purposes *108 of this trial. Because her interests are contrary to your interests. Do you understand that, sir?
“WITNESS COOK: Yes, sir.
“MR. SALTER: And nobody is going to be mad at you if you make a decision not to testify. And nobody is going to be mad at you if you make a decision to testify. It’s just an awkward kind of dynamic we have come into. Do you have some things you would like to ask? “MR. ROBERTS: The only thing I would add is that to make sure that he understood what his right to not incriminate himself meant. Even though he has told other people and made a statement, he seems to be saying, I have already said it once. What he is representing is the truth — I will say it again — but you don’t have to say it again. You have a right to not testify against yourself. That’s the only thing. “MR. SALTER: The fact that you have made that statement, the fact that you have cooperated over in federal court and told them everything that you did and so forth — which I think you are referring to as your statement. You have already made a statement.
“WITNESS COOK: Yes.
“MR. SALTER: You have already entered a plea of guilty in federal court. When those statements were made, they were made under the protections of a particular rule of the federal criminal procedure that says that they couldn’t be used against you. And the government and the U.S. Attorney’s office and the federal government, they keep that to themselves. They are not allowed to. That’s part of our agreement. They are not allowed to come over here and tell the State court, Oh, by the way, look at all of these things the fellow says he has been doing over these years or a period of time. So you are fully protected there. Your situation with the federal government is resolved subject to being sentenced later this week. That is over. He is talking about the fact and the judge and I are trying to talk to you about the reality that if we make a statement out of that context, outside of that federal arena over there, outside of the protections of the federal rules of criminal procedure — that is, to testify today — that he is not bound by any agreement that we have with the U.S. attorney’s office. Does that make sense to you now?
“WITNESS COOK: Yes, sir.”
(Record on direct appeal at pp. R. 245-53; emphasis added.)
Salter explained to Cook that the situation presented a “very real possibility” that the State might seek to indict him on criminal charges if he attempted to testify for Jones. (Record on direct appeal at p. R. 254.) Following that explanation the following occurred.
“WITNESS COOK: I am kind of like right now — are you recommending that I get another lawyer?
“MR. SALTER: I would think if you want to talk to someone, it needs to be somebody — probably in this circumstance about this particular limited issue — other than me. That’s what I am saying. You don’t have to talk with a lawyer, but you have every right to. And I am telling you that I think if you were to talk with someone that was completely outside this loop — completely outside the loop of the lawyers present and perhaps even Ken Moore — I think most criminal defense lawyers or lawyers who practice criminal defense work to any degree of their work—
“WITNESS COOK: Other than Mr. Thigpen.
[[Image here]]
*109 “MR. SALTER: It would have to be someone outside of the loop, so to speak, of our representation if you choose to talk with someone.... But I am caught in this conflict. ... That’s why we are having to have this discussion.... But it’s your decision.
“WITNESS COOK: I don’t want to waste y’all’s time. If I testify without counsel, that wouldn’t be smart.
“MR. SALTER: I would not think so.
“MR. THIGPEN: Would you want us to see if Ken Moore is available?
“WITNESS COOK: Yes, sir.
“MR. SALTER: Can we have a couple of minutes to have him step downstairs and see if Ken Moore is available?
“THE COURT: Yes.
“(Proceedings in recess at 3 p.m.)”
(Record on direct appeal at pp. R. 255-57.)
The record does not disclose whether Cook spoke to another attorney. Five minutes after the above discussion, the following transpired:
“MOTION HEARING
“(In open court at 3:05 p.m.)
[[Image here]]
“MR. SALTER: Your Honor, Ms. Jones has asked me to withdraw my request to call Ronnie Cook as a witness in the case. And that will seemingly resolve it.
“[JONES]: Since there is so much conflict and trying to get a lawyer, we are holding up the Court.
“THE COURT: Holding up the Court is not a problem.
“MR. SALTER: That is not the issue. The issue is are you okay with going forward without calling Ronnie as a witness? I know that is probably not what you would most like to do; but under all the circumstances, is that what you want to do?
“[JONES]: (Nods.)
“MR. SALTER:' It would eliminate these other problems, but no one is wanting to deprive you of a witness. I am not, the prosecution is not, and the Court wants you to do anything that you think is proper in your defense. I personally don’t have a problem with it. At least in speaking with the prosecution, I think we have a lot of what it is we would expect Mr. Cook to testify, in effect, in front of the jury for the jurors’ consideration. They know he has been in and out of the place. I think they have got a feel of what it is that he has doné. Plus the other evidence that we have put on I think bolsters the position we have taken in this case about absence of knowledge and lack of intent to possess it. But that’s a decision that you have to make.
“[JONES]: (No response.)
“MR. SALTER: We will hold a second. I thought we had a firm decision.”
(Record on direct appeal at- pp. R. 257-58.)
“An actual conflict of interest occurs when a defense attorney places himself in a situation ‘inherently conducive to divided loyalties.’ Castillo [v. Estelle ], 504 F.2d [1243] at 1245 [(5th Cir.1974)]. If a defense attorney owes duties to a party whose interests áre adverse to those of the defendant, then an actual conflict exists. The interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.”
Zuck v. Alabama, 588 F.2d 436, 439 (5th Cir.1979).
“In Glasser v. United States, [315 U.S. 60, 92 (1942),] for example, the record showed that defense counsel failed to *110 cross-examine a prosecution witness whose testimony linked Glasser with the crime and failed to resist the presentation of arguably inadmissible evidence. Id., at 72-75. The Court found that both omissions resulted from counsel’s desire to diminish the jury’s perception of a codefendant’s guilt. Indeed, the evidence of counsel’s ‘struggle to serve two masters [could not] seriously be doubted.’ Id., at 75. Since this actual conflict of interest impaired Glasser’s defense, the Court reversed his conviction.”
Cuyler v. Sullivan, 446 U.S. 335, 348-49, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
In Schultz v. State, 481 So.2d 456 (Ala.Crim.App.1985), Schultz was indicted and convicted of possession of marijuana. Schultz argued on appeal from the denial of her petition for writ of error coram nobis that her trial attorney had “a real and actual conflict of interest in representing both her and her co-defendant[, James Beck Wilson].” Schultz v. State, 481 So.2d at 457. Illegal drugs were found in a vehicle in which Wilson and Schultz were both riding. Schultz asserted that she did not know that the drugs were in the car and that they belonged to Wilson. Their attorney, Mr. William Kominos, had represented Schultz in a civil matter “and Wilson and Kominos were close friends, having been roommates at one time.” Schultz v. State, 481 So.2d at 457. Schultz and Wilson “met with Kominos on several occasions to discuss their respective cases” and Kominos “was aware that the drugs found in the car were not hers but Wilsons.” Schultz v. State, 481 So.2d at 457-58. Ko-minos advised Schultz not to testify on her own behalf, but told her she would be acquitted based on an illegal search and seizure of the vehicle. “Thus the appellant had no opportunity to explain the drugs or drug paraphernalia.” Schultz v. State, 481 So.2d at 458. However, Kominos did not advise Wilson not to testify at his trial. “Wilson testified at his trial that the drugs found in the car were not his but, in fact, belonged to ... Schultz.” Id. Schultz was sentenced to 15 years’ imprisonment in the penitentiary and fined $10,000. Thus, she received the maximum sentence allowed “under the law without opportunity to present her defense.” Schultz v. State, 481 So.2d at 459. While “[Wilson] received a similar sentence, he was only fined $1,000. He is no longer in custody.” Schultz v. State, 481 So.2d at 459. Schultz “felt that [Kominos] had a close friendship with Wilson, which meant that Mr. Komi-nos had a conflict of interest in representing her.” Schultz v. State, 481 So.2d at 458. Citing Glasser and Zuck, this Court stated:
“If an attorney owes duties to a party whose interests are adverse to those of one defendant, an actual conflict exists, and the interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client....
[[Image here]]
“The proper judicial analysis in conflict of interest cases does not focus on the actual effect of the conflict on a particular defendant’s case but, rather, revolves around the judicial belief that the Sixth Amendment requires that a defendant may not be represented by counsel who might be tempted to dampen the ardor of his defense in order to placate his other client. See Zuck [v. Alabama, 588 F.2d 436 (5th Cir.1979)]. Further, when a conflict of interest exists on the part of the defendant’s counsel, there is denial of the right to effective representation, even without showing specific prejudice. Castillo v. Estelle, 504 F.2d 1243 (5th *111 Cir.1974); Zuck, supra; Pinkerton v. State, 395 So.2d 1080 (Ala.Crim.App.1980), cert. denied, 395 So.2d 1090 (Ala. 1981); Jacques v. State, 409 So.2d 876 . (Ala.Crim.App.1981); Sellers v. State, 460 So.2d 231 (Ala.Crim.App.1984).
“... [W]here, as here, a clear conflict of interest exists, the accused has, thus, been denied her Sixth Amendment right to the effective assistance of counsel as a matter of law. Pinkerton v. State, 395 So.2d 1080 [(Ala.Crim.App.1980)], cert. denied, 395 So.2d 1090 ([Ala.]1981) and authorities therein cited. See also, United States v. Mers, ... 701 F.2d 1321 (11th Cir.1983).
[[Image here]]
“We note that the trial court failed to enter specific findings with reference to the contentions made by this appellant.
[[Image here]]
“Our review of this record indicates that Mr. Kominos did, in fact, have an actual conflict of interest in his representation of both Ms. Schultz and her co-defendant, Mr. Wilson. As a result thereof, this cause is due to be and the same is, hereby, reversed and remanded for a new trial.”
Schultz v. State, 481 So.2d at 458-59.
Because Jones’s theory of defense was that the drugs were Cook’s and that she had no knowledge of them, Jones’s conviction turned on the State’s proving her knowledge of the presence of the drugs in the apartment. To establish that she had no knowledge of the drugs, counsel intended to rely on the testimony of Cook, and counsel stated his intent in opening argument to the jury. However, because he was also representing Cook, counsel also had a duty to protect Cook from further prosecution and to protect his agreement with the federal authorities. The record from the direct appeal clearly suggests that Cook’s interest were placed above Jones’s. Also, because Cook was never called as a witness, it is not certain that he would have asserted his right not to testify under the Fifth Amendment. Moreover, Jones stated only that she was willing to proceed without Cook because she was “holding up the court.” She never affirmatively stated that she did not want to call Cook 'as a witness. In fact, her counsel stated that proceeding without Cook was “probably not what you would most like to do; but under all the circumstances, is that what you want to do?” (Record from direct appeal at p. R. 257.) Jones did not respond to that question. The “circumstances” Salter referred to was counsel’s conflict of interest which Jones was never ask to waive.
Rule 1.7(a), Ala. R. Prof. Cond., provides:
“(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
“(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
“(2) each client consents after consultation.”
Nothing in the record indicates that the parties consented to Salter and Thigpen’s representing both Jones and Cook. Also, we note that the circuit court failed to enter specific findings with reference to the contentions made by Jones.
“[T]he motives of ... the attorneys who are involved in an actual conflict in representation are irrelevant. Our analysis in conflict of interest cases does not focus on the actual effect of the conflict on a particular defendant’s case. Rather, the basis of these decisions is our belief that the sixth amendment requires that a defendant may not be represented *112 by counsel who might be tempted to dampen the ardor of his defense in order to placate his other client. The fact that a particular lawyer may actually resist that temptation is of no moment.”
Zuck, 588 F.2d at 439-40.
Because an actual conflict of interest affecting counsel’s performance existed, the judgment in this case is due to be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.

. Relevant fines were also imposed.