996 So.2d 804 (2008)
Stephen T. YARBROUGH a/k/a Steven Tracy Yarbrough, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KA-01105-COA.
Court of Appeals of Mississippi.
August 19, 2008.
Rehearing Denied December 16, 2008.
*805 Benjamin Allen Suber, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before LEE, P.J., IRVING and ROBERTS, JJ.
IRVING, J., for the Court.
¶ 1. Stephen T. Yarbrough was convicted in the Lowndes County Circuit Court of aggravated assault on a law enforcement officer and was sentenced as a habitual offender to thirty years in the custody of the Mississippi Department of Corrections. Aggrieved, he appeals and asserts that the court erred in allowing the State to amend the indictment and that the verdict is against the overwhelming weight of the evidence.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Clint Sims, a deputy with the Lowndes County Sheriff's Department, testified that during the early morning hours of October 13, 2006, he was on patrol on Lehmberg Road in his "fully marked" patrol car when he saw a male and female walking on the side of the road. Deputy Sims noticed that the male, who would later be identified as Yarbrough, appeared to be holding the female. He also noticed that a car was parked down the road, so he thought that the male and female needed assistance. He testified that when he approached them, Yarbrough dropped the female, and she fell onto the hood of his patrol car. Yarbrough then fled on foot. According to Deputy Sims, he yelled for Yarbrough to stop, but Yarbrough failed to abide by his order. As a result, Deputy Sims gave chase and notified dispatch that he was involved in a foot pursuit.
¶ 4. Yarbrough ran into a wooded area where he tripped and fell. It was at this point that Deputy Sims caught up with him. Deputy Sims stated that he grabbed Yarbrough by the right arm and placed Yarbrough's left hand on his back. Deputy Sims testified that he was attempting to get Yarbrough to the ground. Deputy Sims recalled that at that point Yarbrough *806 pulled away from him and tried to get away. Again, Deputy Sims grabbed Yarbrough and tried to get him to the ground. Deputy Sims testified that Yarbrough is taller and heavier than he is, so in an attempt to stay in control of the situation, he placed his arm around Yarbrough's neck in a position which would restrict his blood flow. Deputy Sims stated that, by doing this, his microphone was against Yarbrough's back, and the only way he could speak into the microphone to radio for assistance was to loosen his grip and try to lean back. He tried this once, and Yarbrough was able to escape from his grip, so Deputy Sims had to "clamp" him back down. Deputy Sims stated that this occurred several times and that the last time, Yarbrough rotated his hips, causing Deputy Sims to lose his balance and fall on his back. Yarbrough then came down on Deputy Sims with his back on Deputy Sims's chest.
¶ 5. Deputy Sims stated that in an effort to keep Yarbrough from getting to his weapon, he rotated his hips and put his forearm on his weapon, which only left him with one arm to defend himself. Deputy Sims also stated that Yarbrough then placed his right arm on Deputy Sims's neck, preventing him from moving. Deputy Sims recalled that his breathing became restricted. He also recalled Yarbrough stating, "I know you, I just want to go home." Deputy Sims stated that he told Yarbrough to go. Nevertheless, Deputy Sims testified that Yarbrough did not stop pressing against his neck. According to Deputy Sims, Yarbrough then rotated his body weight, shifted forward, and pressed his forearm harder into his neck. Deputy Sims testified that this "forced my head over to the right, and now he was on my brachial artery across my throat and my jaw." At this point, Deputy Sims recalled everything starting to fade to blackness, and he decided to pull his handgun to defend himself. Initially, he was unable to get it out of its holster but succeeded in doing so a short time later. He then was able to get Yarbrough off of him. After regaining control, Deputy Sims stated that he put his handgun back into its holster.
¶ 6. Although Deputy Sims did not lose consciousness, he stated that he was in a great deal of pain. Deputy Sims testified that Yarbrough crawled into the wooded area, but the pain prevented him from pursuing Yarbrough. Deputy Sims testified that he was unable to radio in his location because he could not speak; however, he managed to say "light." He pulled out his tactical light, turned it on, and crawled out of the wooded area and onto the edge of the road so the officers could easily locate him. Travis Robertson, an officer, with the Columbus Police Department, was the first officer to respond.
¶ 7. Deputy Sims testified that he suffered redness and scratching to the front portion of his neck and swelling to the left side of his neck and deep bruising on the inside. He recalled having difficulty swallowing shortly after the altercation and that it took a while for him to speak normally. Deputy Sims was transported via ambulance to the hospital where he was placed on oxygen and given a nebulizer treatment. Also, while at the hospital, an X-ray of Deputy Sims's throat was taken, and he was later released. Deputy Sims positively identified Yarbrough as the person that he had been involved in the altercation with.
¶ 8. On cross-examination, Deputy Sims stated that Yarbrough placed his forearm on his throat and stated that he wanted to go home. It was at that point that Deputy Sims grabbed Yarbrough by the throat, and Yarbrough reacted by applying more pressure to Deputy Sims's throat with his forearm. On redirect, Deputy Sims testified *807 that Yarbrough swung at him; however, he did not mention this on direct examination.
¶ 9. Officer Robertson also testified on behalf of the State. He stated that he was headed to Lehmberg Road to respond to a motor vehicle accident when he saw Deputy Sims's patrol car parked in the roadway and a female standing beside it. The female pointed Officer Robertson toward the general direction that Deputy Sims had gone. Officer Robertson learned from radio traffic that Deputy Sims was involved in a foot pursuit. Dispatch also informed responding officers to look for a light that Deputy Sims would be shining near the edge of the woods.
¶ 10. Shortly thereafter, Officer Robertson located Deputy Sims. Officer Robertson stated that when he approached Deputy Sims, he observed that Deputy Sims could not speak, was covered in grass and brush, had a red and swollen neck and had trouble breathing. He also noted that Deputy Sims could not stand on his own and needed assistance getting into the ambulance. Officer Robertson recalled that about twelve to fifteen officers were on the scene at this point. According to Officer Robertson, Deputy Sims was not able to speak in a normal voice that night.
¶ 11. Tony Cooper, an investigator with the Lowndes County Sheriff's office, was on call the night that the incident occurred. He testified that he was at home when he was notified that a deputy had been assaulted, but when he arrived at the scene about fifteen minutes later, Deputy Sims had already been taken to the hospital. Investigator Cooper learned from the female that the person that they were looking for was Yarbrough. Investigator Cooper and the other officers searched for Yarbrough for hours and finally located him later that day. Investigator Cooper testified that after receiving a tip, he found Yarbrough hiding in a bathtub at his grandmother's apartment.
¶ 12. Yarbrough also took the stand, but he recalled the incident differently than Deputy Sims. Yarbrough stated that when he was approached by Deputy Sims, he dropped the female, and she fell on the ground. He stated that he fled because he was "overwhelmed with a sense of panic at the police car." He also stated that he stumbled and fell to his knees and that Deputy Sims then yelled at him to "stop resisting." According to Yarbrough, Deputy Sims put him in a "choke hold" which cut off his air for about eight to ten seconds. Yarbrough testified that he started to panic and that when he felt Deputy Sims's grip loosen, he put Deputy Sims in a choke hold. However, Yarbrough stated that when he realized what he was doing, he released Deputy Sims because he did not want to hurt him. He testified that after he thought Deputy Sims had not been injured he patted him on the shoulder and said, "I love you man, just let me go." At this point he claims that he ran further into the woods. When asked about Deputy Sims's testimony that Yarbrough put his forearm across his neck, restricting his air supply, Yarbrough said that "[i]t was across his chest, but I wasn'tit was just a prop. I wasn't trying toand I was leveled out, so I wasn't putting full weight on him. I wasn't trying to hurt him."
¶ 13. Yarbrough stated that, after fleeing, he hid in a shed and waited on the officers to leave the area. He also stated that he told the owner of the shed that he had been involved in a motor vehicle accident and asked the owner for a ride to his grandmother's apartment. Yarbrough further stated that the officers found him in the bathroom of his grandmother's apartment; however, he denied that he was hiding in the bathtub. Yarbrough also denied swinging at Deputy Sims.

*808 ANALYSIS AND DISCUSSION OF THE ISSUES

1. Amendment of the Indictment
¶ 14. On the day of trial, the State moved to strike the word serious from the indictment. Yarbrough objected to the amendment, arguing that it was substantive in nature and would cause him to be unprepared for trial. The judge initially denied the motion but after further argument from the State allowed the amendment. On appeal, Yarbrough takes the same position that he did at trial, arguing that the amendment was one of substance rather than form and that due to the amendment he was unprepared for trial. Yarbrough also argues that his defense changed, causing him to suffer prejudice.
¶ 15. The indictment, as amended, reads as follows:
THE GRAND JURORS of the State of Mississippi, taken from the body of the good and lawful men and women of said County, duly elected, empanelled, sworn and charged, at the Term aforesaid of the Court aforesaid, to inquire in and for the body of the County aforesaid, in the name and by the authority of the State of Mississippi, upon their oaths present that:
STEVEN YARBROUGH
late of the County aforesaid, on or about the 13th day of October, 2006, in the County and State aforesaid, did unlawfully, wilfully, feloniously, purposely, and knowingly, cause or attempt to cause serious bodily injury to Clint Sims, a law enforcement officer with the Lowndes County Sheriff's Department, by a means likely to produce death or serious bodily harm, at a time when the said Clint Sims was acting within the scope of his official duties and office, by choking the said Clint Sims, without authority of law and not in necessary self defense, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Mississippi[.]
"To be permissible, the amendment to an indictment must be of form and not of substance." Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994) (quoting Akins v. State, 493 So.2d 1321, 1322 (Miss. 1986)). Thus, an indictment may be amended as long as it "does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." Id.
¶ 16. Amending the indictment to reflect that Yarbrough caused or attempted to cause bodily injury, rather than serious bodily injury, does not change the essence of the charge: aggravated assault upon a law enforcement officer. Yarbrough unlawfully assaulted a law enforcement officer. The amendment simply changed the extent of the injuries suffered by Deputy Sims. At trial, Yarbrough argued that he simply propped his arm against Deputy Sims's throat but did not intend to hurt him. We fail to see how Yarbrough's defense changed by the removal of the word serious from the indictment. Yarbrough's defense that he was only trying to get away and did not mean to hurt Deputy Sims would have been the same whether the indictment contained the word serious or not. This issue lacks merit.

2. Weight of the Evidence
¶ 17. Yarbrough also argues that the trial court erred in denying his motion for a new trial. "A motion for [a] new trial challenges the weight of the evidence." Foster v. State, 919 So.2d 12, 16(¶ 20) (Miss.2005) (citing Sheffield v. State, 749 So.2d 123, 127(¶ 16) (Miss.1999)). "In deciding *809 whether a jury verdict is against the overwhelming weight of the evidence, this Court will disturb a jury verdict only when it is so contrary to the overwhelming weight of evidence that allowing it to stand would sanction an unconscionable injustice." Martin v. State, 970 So.2d 723, 726-27(¶ 17) (Miss.2007) (citing Taggart v. State, 957 So.2d 981, 987(¶ 11) (Miss.2007)).
¶ 18. The record indicates that Yarbrough's testimony differed from that of Deputy Sims. Yarbrough denied purposefully applying pressure to Deputy Sims's neck. He testified that Deputy Sims was injured when Yarbrough maneuvered out of the hold that Deputy Sims had on him. Yarbrough testified that Deputy Sims's testimony to the contrary was not true. In addition to Deputy Sims and Yarbrough, the jury also heard testimony from Officer Robertson, who described Deputy Sims's physical condition when he arrived at the scene. In Mississippi, it is well established that:
when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony. This wise rule applies with equal force to the State's witnesses and the appellant's witnesses, including the appellant himself. We have repeatedly held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the State or on behalf of the accused. In other words, the credibility of witnesses is not for the reviewing court.
Scott v. State, 796 So.2d 959, 968(¶ 31) (Miss.2001) (quoting Gathright v. State, 380 So.2d 1276, 1278 (Miss.1980)). There is no merit to this issue.
¶ 19. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER AND SENTENCE OF THIRTY YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.