ROBERTS, J.,
for the Court:
¶ 1. The Lowndes County Circuit Court denied Stephen Yarbrough’s motion for post-conviction relief (PCR) after an evi- *145 dentiary hearing by finding that he waived any conflict involving his trial attorney Rodney Ray’s simultaneous representation of Deputy Clint Sims, Yarbrough’s alleged victim, and Yarbrough. We find that there was an actual conflict between Ray’s representation of Yarbrough and Deputy Sims, that Yarbrough did not waive that conflict, and that the conflict deprived Yar-brough of effective representation at trial. Therefore, we reverse and render the circuit court’s denial of Yarbrough’s PCR motion, and we remand for a new trial on the merits.
FACTS AND PROCEDURAL HISTORY
¶ 2. On October 13, 2006, Deputy Sims and Yarbrough engaged in a struggle resulting in Deputy Sims seeking medical treatment for restricted breathing allegedly caused by Yarbrough choking him.[1] Yarbrough was indicted on one count of aggravated assault of a law-enforcement officer for causing or attempting to cause “serious bodily injury to Clint Sims, a law[-]enforcement officer ..., by a means likely to produce death or serious bodily harm.... ” The indictment was later amended to reflect Yarbrough’s habitual-offender status under Mississippi Code Annotated section 99-19-81 (Supp.2018) and to strike the word “serious.”[2]
¶ 8. Yarbrough had retained Ray for some pending drug charges prior to his altercation with Deputy Sims, and Ray agreed to represent Yarbrough in both cases. Yarbrough’s trial proceeded with the primary evidence being Deputy Sims’s and Yarbrough’s conflicting testimony regarding the incident. They were the only two eyewitnesses to the scuffle, and they both testified at trial. Yarbrough was ultimately found guilty and sentenced, as a habitual offender, to thirty years in the custody of the Mississippi Department of Corrections (MDOC).
¶ 4. Represented by the Office of Indigent Appeals, Yarbrough directly appealed his conviction and sentence, and this Court affirmed both in 2008. See Yarbrough v. State, 996 So.2d 804 (Miss.Ct.App.2008) (mandate issued January 7, 2009). However, claims of an attorney conflict and ineffective assistance were not raised or addressed in his appeal and were not apparent in the appellate record. Yarbrough sought relief from the Mississippi Supreme Court for leave to file a PCR motion, with the primary issues being the attorney conflict and ineffective assistance. Ray represented Deputy Sims in an August 2006 divorce proceeding. Then, in March 2007, Ray also filed a petition for contempt against Deputy Sims’s ex-wife on Deputy Sims’s behalf. Deputy Sims’s ex-wife filed her answer and counterclaim in April 2007. Yarbrough’s trial began on May 15, 2007, and the final order in the contempt action was not entered until later that same year. The supreme court granted Yarbrough’s motion for leave to file a PCR motion on July 28, 2009. The supreme court order also stated that the circuit court “shall hold a hearing” on the PCR motion; the circuit court held hearings on April 27, 2010, and November 23, 2010.
¶5. The facts underlying the conflict were elucidated at the evidentiary hear *146 ings. According to Janice Gilliam, Yar-brough’s mother, Ray informed her that he knew Deputy Sims, and he thought he could get Deputy Sims to drop the charges. Gilliam also explained that Ray did not elaborate on his relationship with Deputy Sims until the day of Yarbrough’s trial. Ray’s prior and current representation of Deputy Sims was not disclosed to the circuit court at the time of trial. Gilliam also stated that she was never advised about any problems that could arise with having Ray represent both Yarbrough and Deputy Sims, albeit in unrelated matters. Yarbrough testified at the evidentiary hearing. During his testimony, he stated that he was “shocked” to find out on the day of his trial that Ray represented Deputy Sims, but that he “figured [Ray] was talking about something in the past.” Yarbrough reiterated that at no point from October 2006, when the incident between Deputy Sims and himself occurred, until his trial in May 2007, did Ray inform him that there was a conflict between Ray’s representation of Yarbrough and Deputy Sims, nor did Ray ask Yarbrough to waive any conflict.
¶ 6. Ray also testified at the evidentiary hearing. He admitted that he told Gilliam that it could be beneficial to the case that he knew Deputy Sims. According to his testimony, Ray stated: “I told them that I knew [Deputy Sims], that I had dealt with him in the past, ... that I had helped him in the past, and that I thought I could[,] at some point[,] get him to go to the [district attorney] and work with us.... ” Additionally, Ray explained that he had negotiated a plea deal for Yarbrough where he would serve twenty years total for all of Yarbrough’s pending charges, including the drug charges and the charge of aggravated assault of a law-enforcement officer. On cross-examination, Ray testified that he could not remember whether he informed Yarbrough at the time of trial that he was currently representing Deputy Sims in an unrelated matter, and he could not remember whether he discussed with Yarbrough any possible adverse risks associated with Ray’s representation of Deputy Sims. Ray could not identify any adverse risk to Yarbrough that might arise from his simultaneous representation of Yarbrough, the defendant, and Deputy Sims, the victim. Lastly, Ray explained that he did not subpoena Deputy Sims’s medical records or cross-examine him on his asthmatic condition because it was not part of his trial strategy. At the eviden-tiary hearing, Ray was asked the following on cross-examination: “After you had informed [Yarbrough] and his mother about your representation of [Deputy] Sims, as you viewed it, were there any risks associated with continuing to represent [Yar-brough] while you were representing [Deputy] Sims?” Ray answered: “Absolutely not.... [I]f there would have been any hint of a problem regarding my relationship with [Deputy] Sims and [Yarbrough] to the negative, I would [not] have done it, but it was to the positive.... [I]t had positive effects, that relationship. So no, ... I did [not] see any risks.” Ray further testified: “I crossed [Deputy Sims] like I do anybody else, so I did [not] treat him any differently than I would any police officer, many of whom I know and have helped through the years.”
¶ 7. Following the hearing, the circuit court entered a lengthy order denying Yarbrough’s PCR motion and finding that while there was an apparent, actual conflict, Yarbrough knowingly and intelligently waived any conflict. Yarbrough appeals the circuit court’s denial of his PCR motion. He raises the following four issues on appeal:
I. The [circuit] court erred in finding that Yarbrough waived the conflict[, *147 as t]he conflict was so egregious as to be unwaivable.
II. Alternatively, if the conflict is waivable, Yarbrough could not have knowingly and intelligently waived it inasmuch as his lawyer admitted he knew of no ramifications and, thus, could not have advised Yar-brough of the same.
III. The [circuit] court erred in refusing to grant Yarbrough’s motion to allow him access to Sims[’s] medical records.
IV. [Yarbrough’s t]rial counsel was ineffective in failing to request an instruction and argued that Yar-brough had a right to resist an unlawful arrest or an instruction that would tell the jury that it is not an official duty to effect an unlawful arrest.
STANDARD OF REVIEW
¶ 8. “When reviewing a lower court’s decision to deny a petition for post conviction relief this Court will not disturb the trial court’s factual findings unless they are found to be clearly erroneous. However, where questions of law are raised the applicable standard of review is de novo.” Brown v. State, 731 So.2d 595, 598 (Miss.1999) (citing Bank of Miss. v. S. Mem’l Park, Inc., 677 So.2d 186, 191 (Miss.1996)).
ANALYSIS
¶ 9. Yarbrough asserts that the circuit court erred in denying his PCR motion after finding that he waived any conflict of Ray representing Deputy Sims in an unrelated matter at the same time Ray was defending Yarbrough for assaulting Deputy Sims. We must conclude that the circuit court’s finding of a waiver was clearly erroneous. We find that there was an actual conflict and that Yarbrough did not knowingly or intelligently waive that conflict; therefore we reverse and render the circuit court’s denial of Yarbrough’s PCR motion and remand for a new trial.
¶ 10. Both the United States and Mississippi Constitutions provide that an accused has the right to assistance of counsel. See U.S. Const, amend. VI, Miss. Const, art. 3, § 26. “[A]dept representation encompasses two broad principles: minimum competence and loyal assistance.” Armstrong v. State, 573 So.2d 1329, 1331 (Miss.1990) (emphasis added and citation omitted). Additionally, the constitutional guarantee of due process of law pursuant to the Fifth Amendment of the United States Constitution requires undivided loyalty of defense counsel, and “[u]nder our system of jurisprudence, if a lawyer is not one hundred percent loyal to his client, he flunks.” Littlejohn v. State, 593 So.2d 20, 22-23 (Miss.1992). Simply, “[t]he Sixth Amendment right to counsel encompasses a right to effective assistance from an attorney who is conflict-free.” McCaleb v. State, 743 So.2d 409, 411 (¶ 9) (Miss.Ct.App.1999) (citing Sykes v. State, 624 So.2d 500, 503 (Miss.1993)).[3]
¶ 11. We conclude the supreme court’s 2011 decision in Kiker v. State, 55 So.3d 1060 (Miss.2011), controls the outcome of this case. Julius Wesley Kiker *148 was convicted of the murder of his wife. Kiker, 55 So.3d at 1062 (¶ 1). Bobby Crawford, a jailhouse informant, testified at Kiker’s trial that Kiker told him that he had intentionally shot his wife; this testimony contradicted Kiker’s testimony of an accidental shooting. Id. at 1063 (¶¶ 3-4). At trial, Kiker was represented by two attorneys, one of -whom was also representing Crawford in an unrelated case. Id. at 1064 (¶ 6). Kiker testified at his PCR hearing that he did not know that one of his attorneys was also representing Crawford until Crawford announced it during cross-examination, and he would have not waived the conflict of interest. Id. at (¶ 9). The supreme court stated in Kiker that “[w]hen the accused is represented by an attorney with an actual conflict of interest, the accused has received ineffective assistance of counsel as a matter of law, and ‘reversal is automatic irrespective of a showing of prejudice unless the accused knowingly and intelligently waived his constitutional right to conflict free representation.’ ” Id. at 1066 (¶ 16) (quoting Armstrong v. State, 573 So.2d 1329, 1335 (Miss.1990)). The supreme court noted that other jurisdictions “have rightly held that when a defense attorney contemporaneously represents a prosecution witness, there is a per se, actual conflict of interest.” Id. at 1067 (¶ 19). See, e.g., People v. Stewart, 126 A.D.2d 943, 511 N.Y.S.2d 715, 717 (N.Y.App.Div.1987) (where a lawyer represents the defendant’s father in an unrelated civil case and father testifies against the defendant, prejudice is presumed). The supreme court ultimately reversed and remanded Kiker’s case because Kiker did not knowingly and intelligently waive the actual conflict of interest. Kiker, 55 So.3d at 1068 (¶ 23). Similarly, in the present case, we are presented with an actual conflict that was not knowingly and intelligently waived; thus, our disposition must too be to reverse and remand.
¶ 12. Ray represented Deputy Sims in divorce proceedings that were finalized in August 2006. Several months later, in October 2006, the altercation between Deputy Sims and Yarbrough occurred. Prior to October 2006, Yarbrough retained Ray to represent him on unrelated drug charges, and after the altercation, Ray agreed to also represent Yarbrough on the charge of aggravated assault of a law-enforcement officer. In March 2007, just two months before Yarbrough’s trial for the aggravated assault of Deputy Sims, Ray filed a petition for contempt against Deputy Sims’s ex-wife on Deputy Sims’s behalf. Deputy Sims’s ex-wife filed her answer and counterclaim in April 2007. Yar-brough’s trial began on May 15, 2007, and the final order in Deputy Sims’s contempt action was not entered until June 2007. Thus, Ray’s representation of Yarbrough overlapped with his representation of Deputy Sims. This overlap results in an actual conflict of interest.
¶ 13. Yarbrough cites to several examples in the record to show how he was actually prejudiced by the conflict. Yar-brough claims that Ray’s failure to request Deputy Sims’s medical records or cross-examine Deputy Sims on his asthmatic condition and whether his asthmatic condition could have been the real reason for his inability to breathe following the incident demonstrate the conflict. Yarbrough also cites to instances at the trial where it might appear that Ray bolsters Deputy Sims’s credibility. For example, Yar-brough claims that the following statements made throughout trial are indicative of prejudice arising from the conflict: Ray referred to Deputy Sims as a “fine officer” during voir dire; Ray stated, “I know you to be a good officer. I know that. I [have] dealt with you for years[,]” during his cross-examination of Deputy Sims; Ray stated in closing arguments that Dep *149 uty Sims “is a truthful guy ... [He] is a good guy. He is a good officer.” Yar-brough also claims he was prejudiced by Ray’s failure to submit a jury instruction on his right to resist an unlawful arrest by Deputy Sims. However, because we find an actual conflict, Yarbrough does not have to prove, and we do not have to determine, whether there was any prejudice. It is to be presumed.
¶ 14. A finding of an actual conflict is not the end of the analysis because a knowing and intelligent waiver of that conflict can cure the issue. See Littlejohn v. State, 593 So.2d 20, 25 (Miss.1992). The United States Supreme Court has stated that “courts indulge every reasonable presumption against waiver of fundamental constitutional rights and that [appellate courts] do not presume acquiescence in the loss of fundamental rights.” Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (internal citations omitted).[4] Therefore, a waiver must be made with “full awareness of the conflict’s potential ramifications.” Kiker, 55 So.3d at 1068 (¶ 22). See also Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (“Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.”)
¶ 15. While it is undisputed that Ray informed Yarbrough that he knew Deputy Sims and their relationship could be advantageous, there was no evidence that Yarbrough was informed of any possible risks that could result from Ray’s representation of both Deputy Sims and Yar-brough. Additionally, Yarbrough testified that he was not aware that Ray was presently representing Deputy Sims, and Ray testified that he did not know if he told Yarbrough of his present representation of Deputy Sims. Ray did not inform the circuit court of his representation of both Yarbrough and Deputy Sims; thus, the circuit court was unaware of the conflict and could not have properly inquired as to whether Yarbrough wished to make an informed decision of waiving the conflict. Without the knowledge of the present attorney-client relationship between Ray and Deputy Sims, as well as the risks associated with that relationship, Yarbrough could not have knowingly and intelligently waived the conflict of interest. We find that the circuit court was clearly erroneous in its finding that Yarbrough gave a knowing and intelligent waiver.
¶ 16. Therefore, we find that Ray’s representation of Yarbrough and Deputy Sims was an actual conflict that was not knowingly and intelligently waived by Yar-brough. We reverse and render the circuit court’s denial of Yarbrough’s PCR motion. We remand this case to the circuit court for a new trial.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS REVERSED AND RENDERED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS *150 OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON AND FAIR, JJ., CONCUR. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., BARNES AND FAIR, JJ. JAMES, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION.

. We provide a limited recitation of the underlying facts for the purpose of this appeal; however, a more thorough recitation can be found in this Court’s opinion of Yarbrough v. State, 996 So.2d 804 (Miss.Ct.App.2008).

. In addition to the amendment reflecting his habitual-offender status, the amended indictment charged Yarbrough with causing or attempting to cause “bodily injury to Clint Sims, a law[-]enforcement officer ... by a means likely to produce death or serious bodily harm....”

. Mississippi Rule of Professional Conduct 1.7(b) provides:
A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer’s responsibilities to another client or to a third person ... unless the lawyer reasonably believes:
(1) the representation will not be adversely affected; and
(2) the client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the representation and the advantages and risks involved.

. The Supreme Court further explained:
The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused — whose life or liberty is at stake— is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. .While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.
Johnson, 304 U.S. at 465, 58 S.Ct. 1019.