On Return to Remand 

On Application for Rehearing

JOINER, Judge.
This Court’s opinion of March 13, 2015, is withdrawn, and the following is substituted therefor.
Jeffery Ervin appeals the circuit court’s decision to deny, in part, Ervin’s Rule 32, Ala. R.Crim. P., petition for postconviction relief. We reverse and remand.

Facts and Procedural History

On April 7, 2009, Ervin, pursuant to a negotiated plea agreement, pleaded guilty to third-degree robbery, see § 13A-8-43, Ala.Code 1975, and to unlawful distribution of a controlled substance, see § 13A-12-211, Ala.Code 1975, and was sentenced to 10 years’ imprisonment on each conviction, those sentences to run concurrently. Those sentences were split, and Ervin was ordered to serve 30 months’ imprisonment, followed by 5 years’ probation. (C. 5.) Ervin did not appeal his convictions or sentences.
On July 26, 2012, Ervin filed in the circuit court a Rule 32, Ala. R.Crim. P., petition for postconviction relief alleging, among other things, that his trial counsel—William T. Faile—had been ineffective. Specifically, Ervin alleged that Faile had represented him from December 28, 2008, through April 7, 2009,[1] when Ervin pleaded guilty to and was sentenced for the underlying offenses. Ervin claimed that “[a]t the sanie time [that] [Faile] was *1076 representing [Ervin], [Faile] [was] also representing] Justin Charles Malone,” who was charged as a codefendant in the same robbery as Ervin and who also gave a statement to police implicating Ervin in the robbery. (C. 17, 79.) Regarding Faile’s representing both Malone and Er-vin, Ervin alleged:
“In the case at bar, William T. Faile clearly was in the position of having divided loyalties. By representing Malone, the co-defendant in the robbery case, along with Ervin, Faile had to have known that Malone had made a statement implicating Ervin in the robbery. Certainly if, Ervin had insisted on going to trial, Malone would have been a witness against [Ervin], placing Faile in a position of having to cross-examine his own client.”
(C. 21.) Regarding the timing of these allegations, Ervin pleaded:
“Finally, these facts only came to light in June of 2012. At that time, undersigned counsel had in his representation of Ervin in federal court discovered that George Jones, III, had voluntarily given up his license to practice law. Thereafter, counsel discovered that William T. Faile took over representing Ervin. The investigation of William T. Faile revealed that he had had his license removed. It was only after undersigned counsel reviewed the court files on these cases that it was learned that William T. Faile also undertook to represent Justin Charles Malone, the co-defendant in the robbery case.”
(C. 22.) To support his allegations, Ervin attached to his petition numerous exhibits, including case-action summaries and indictments showing that Faile represented both Ervin and Malone and that both Er-vin and Malone had been indicted for a December 2007 robbery at a Sonic Drive-In restaurant. Ervin also included an exhibit demonstrating that Malone had implicated Ervin in the 2007 robbery. (C. 23-80.)
On August 27, 2012, the State filed a “Response to Petitioner’s Rule 32 Petition and Motion to Dismiss,” alleging that Er-vin’s claim was precluded under Rule 32.2(a)(3) and (a)(5), Ala. R.Crim. P.; that his claim was time-barred under Rule 32.2(c), Ala. R.Crim. P.; and that his claim was without merit. (C. 82-85.)
On September 12, 2012, Ervin filed a reply to the State’s response, asserting that his claim was, in fact, meritorious and, further, that he “ha[d] demonstrated ... extraordinary circumstances justifying the application of the doctrine of equitable tolling.” (C. 89-90.) Specifically, Ervin asserted that he
“had no knowledge and no way of knowing of the dual representation and the conflict that .,. Faile was operating under. Ervin and Malone did not appear in court at the same time. In fact, it took undersigned counsel a great deal of investigating in order to uncover the fact that Faile represented Malone and that Malone had made a statement implicating Ervin in the robbery. In addition, Ervin had no knowledge that Faile had been involuntarily relieved of his right to practice , law due to dementia and that the dementia reached back to the period when Faile was representing Ervin.”
(C. 91.)
On October 23, 2012, Ervin amended his petition to include, among other things, an affidavit in which Ervin asserted the following:
“In June of 2012,1 found out that Mr. Faile not only represented me but he represented Justin Malone, too. I also found out that Justin Malone was the person who told the police I was in *1077 volved in the ... robbery. I didn’t know any of this before then. If I had known Faile was representing Malone, I would have fired him. In addition, in June of 2012, I learned that Mr. Faile had stop[ped] practicing law in May of 2010. The statements in support of that finding indicate that Faile had been messing up cases since 2008. This was the same way he handled my case.”
(C. 112.)
On November 20, 2012, the circuit court issued a written order concluding that Er-vin had not “presented] the extraordinary circumstances required by Ex parte Ward[,
46 So.3d 888 (Ala.2007),]” to support a claim of equitable tolling and that Ervin had “simply waited too late to file [his] petition.” (C. 118.) Thereafter, Ervin filed a timely notice of appeal.
Ervin, in his initial brief on appeal, argued that the circuit court erred when it summarily dismissed his claim of ineffective assistance of trial counsel and that his “Rule 32 motion for ineffective assistance of counsel was ‘equitably tolled.’ ” (Ervin’s brief, p. 4.) The State, in its brief on appeal, however, argued that Ervin’s petition was untimely filed and that Ervin “failed to make any showing that the doctrine of equitable tolling should be applied in his case.” (State’s brief, p. ii.)
We agreed with Ervin’s argument; thus, on February 27, 2014, this Court issued an order remanding Ervin’s case to the circuit court for that court “to conduct an eviden-tiary hearing pursuant to Rule 32.9(a), Ala. R.Crim. P., to address the allegations that Faile simultaneously represented Ervin and Malone and to ‘make specific findings of fact relating to each material issue of fact presented.’” (Record on Return to Remand, C. 5.)
On remand, the circuit court complied with our instructions. Specifically, the circuit court, on March 3, 2014, issued an order directing both Ervin and the State to “submit evidence on the issues in this case by affidavit, written interrogatories, or depositions in lieu of an evidentiary hearing.” (Record on Return to Remand, C. 7.) In response to the circuit court’s order, Ervin submitted numerous exhibits, including case-action summaries and indictments showing that Faile had represented both Ervin and Malone and that both Ervin and Malone had beeh indicted for a December 2007 robbery at a Sonic Drive-In restaurant; an exhibit demonstrating that Malone had implicated Ervin in the robbery; and an affidavit from Er-vin. The State, however, failed to submit any evidence to support its position.[2]
On June 10, 2014, the circuit court issued an order granting Ervin relief as to his claim of ineffective assistance of counsel in the robbery case, finding:
“5. That Attorney William T. Faile did, in fact, represent Jeffery T. Ervin ... and Justin Charles Malone, and
“6. That [Ervin] and [Malone] were charged as codefendants in the same robbery, namely that ’ of Candice *1078 McCraw and Sonic Drive-In on or about December 9, 2007, and
• • “7. That [Malone] did, in fact, give a statement to police implicating Ervin in the robbery.”
(Record on Return to Remand, C. 84.) Thereafter, the circuit court concluded:
“8. Under ... Strickland v. Washington, 466 U.S. 668 (1984), where an actual conflict of interest exists, an ineffective assistance of counsel claim is presumed.
“9. In addition, ‘Once a defendant makes a sufficient showing of an.actual conflict that adversely affected counsel’s performance, prejudice. .... is presumed.’ Jones v. State, 937 So.2d 96,100 (Ala.Crim.App.2006).
“10. The Court finds that.... Jeffery T. Ervin has shown that.his attorney labored under an actual conflict of interest .simultaneously representing Ervin and [Malone].
“11. While the Court finds that [Er-vin] was not necessarily prejudiced by his attorney’s conflict of interest due to the result, because of the presumption of prejudice in this case to which no rebuttal has been filed,' the Court has no choice but to set aside the conviction for robbery.
“WHEREFORE, the' premises considered, the judgment, conviction and sentence heretofore rendered in [the robbery case] is hereby set aside and held for naught. It is further ordered that the Robbery, [first] degree, charge is hereby reinstated and [Ervin] will stand trial for said offense.”
(Record on Return to Remand, C. 84-85.) With- regard to his claim of ineffective assistance of counsel in the unlawful-distribution-of-a-controlled-substance case, the circuit court denied Ervin’s claim, finding as follows:
“5. That Attorney William T. Faile did, in fact, represent Jeffery T. Ervin ... and Justin Charles Malone, and
“6. That [Ervin] and [Malone] were charged as codefendants in the same robbery, namely that of Candice McCraw and Sonic Drive-In on or about December 9,2007, and
“7. That [Malone] did, in fact, give a statement to police implicating Ervin in the robbery.
“8.. That there was no conflict of interest in CC-09-15, and that there is no presumption of prejudice in this case.
“9. That [Ervin] received adequate representation receiving a substantial reduction in the sentence than he would have received if he had been convicted.
“CONCLUSIONS OF LAW
“10. The Court finds that [Ervin] was not prejudiced because his attorney had no conflict of interest in this case.”[3]
(Record on Return to Remand, C. 169.)
On return to remand, this Court granted Ervin’s motion and allowed him to submit a brief on return to remand. In that brief, Ervin argues that the circuit court erred when it denied his claim of ineffective assistance of counsel as to his unlawful-distribution-of-a-controlled-substance conviction.

Standard of Review

“The .standard of review this Court uses in evaluating the rulings made by the trial court [in a postconviction pro *1079 ceeding] is whether the trial court abused its discretion.” Hunt v. State, 940 So.2d 1041, 1049 (Ala.Crim.App.2005). However, “when the facts are undisputed and an appellate court is presented with pure questions of law, [our] review in a Rule 32 proceeding is de novo.” Ex parte White, 792 So.2d 1097, 1098 (Ala.2001). Additionally, “we may affirm a circuit court’s ruling on a postconviction petition if it is correct for any reason.” Smith v. State, 122 So.3d 224, 227 (Ala.Crim.App.2011).

Discussion

Initially, we note that, because the circuit court granted Ervin relief as to his conviction for third-degree robbery in case number CC-08-44, Ervin’s claims regarding that conviction and sentence, which he raised in his materials submitted to this Court on original submission, have been rendered moot.[4]
As to his unlawful-distribution-of-a-controlled substance conviction,. Ervin, in his *1080 brief on return to remand, contends that the circuit court erred when it denied his ineffective-assistance-of-counsel claim as to that conviction because, he says, (1) “Faile’s divided loyalties prevented him from providing Ervin with the effective assistance of counsel in [the unlawful-distribution case]” (Ervin’s brief on return to remand, p. 7); and (2) Faile’s “[h]aving been found ineffective in negotiating the plea in [the robbery case], that plea cannot form the basis of the conviction in [the unlawful-distribution case]; the conviction [for the unlawful-distribution case] must also be set aside on the ground of ineffective assistance of counsel, there being no valid evidence to support the conviction in [the unlawful-distribution case].” (Ervin’s brief on return to remand, p, 13.) Although we express no opinion regarding the “validity” of the evidence, we agree that the conviction in the distribution case must be set aside.
Conflicts of interest are governed by Rule 1.7, Ala. R. Prof. Cond., which provides:
“(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
“(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
“(2) Each client consents after consultation.
“(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer’s responsibilities to another client or a third person, or by the lawyer’s own interests, unless:
“(1) The lawyer reasonably believes the representation will not be adversely affected; and
“(2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.”
(Emphasis added.)
In a criminal case in which a lawyer undertakes simultaneous representation of codefendants, a conflict of interest generally occurs. The Comment to Rule 1.7, Ala. R. Prof. Cond., recognizes the inherent danger of simultaneous representation of codefendants, warning: “The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant.” (Emphasis added.) A lawyer may simultaneously represent codefen-dants in a single criminal proceeding only if the lawyer complies with the mandates of Rule 1.7, Ala. R. Prof. Cond. If, however, a lawyer fails to obtain consent from either of the codefendants or fails to consult with the codefendants about the simultaneous representation, as is required by Rule 1.7, Ala. R. Prof. Cond., a lawyer has a conflict of interest and must withdraw from representing those clients. See Rule 1.16(a)(1), Ala. R. Prof. Cond. (“[A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client, if: (1) The representation will result in violation of the Rules of Professional Conduct or other law.” (emphasis added)). When a lawyer has a conflict of interest, fails to follow Rule 1.7, Ala. R. Prof. Cond., and does not withdraw from representation of that client, see Rule 1.16, Ala. R. Prof. Cond., there may exist an ineffective-assistance-of-counsel claim.
Addressing a lawyer’s conflict of interest as it relates to the Sixth *1081 Amendment right to effective counsel, this Court has explained:
“ ‘ “ ‘[I]n order to establish a violation of the Sixth Amendment, ... [a defendant] must demonstrate that an actual conflict of interest adversely affected his lawyer’s performance.’ Cuyler v. Sullivan, 446 U.S. [335] at 348, 100 S.Ct. [1708] at 1718 [ (1980) ]. Accord Williams v. State, 574 So.2d 876, 878 (Ala.Cr.App.1990). To prove that an actual conflict adversely affected his counsel’s performance, a defendant must make a factual showing ‘that his counsel actively represented conflicting interests,’ Cuyler v. Sullivan, 446 U.S. at 350, 100 S.Ct. at 1719, ‘ “and must demonstrate that the attorney ‘made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other.’ ” ’ Barham v. United States, 724 F.2d 1529, 1532 (11th Cir.) (quoting United States v. Mers, 701 F.2d 1321, 1328 (11th Cir.1983)), cert. denied, 467 U.S. 1230, 104 S.Ct. 2687, 81 L.Ed.2d 882 (1984). Once a defendant makes a sufficient showing of an actual conflict that adversely affected counsel’s performance, prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) — i.e., ‘that, but for counsel’s unprofessional errors, the result of the proceeding would have been different’— is presumed. Strickland, 466 U.S. at 694, 692, 104 S.Ct. at 2068, 2067. See United States v. Winkle, 722 F.2d 605, 610 (10th Cir.1983); Williams v. State, 574 So.2d at 878.” ’ ”
Jones v. State, 937 So.2d 96, 99-100 (Ala.Crim.App.2005) (quoting Wynn v. State, 804 So.2d 1122, 1132 (Ala.Crim.App.2000)). Additionally,
“ ‘[a]n actual conflict of interest occurs when a defense attorney places himself in a situation “inherently conducive to divided loyalties.” Castillo [v. Estelle ], 504 F.2d [1243] at 1245 [ (5th Cir.1974) ]. If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.’
“Zuck v. Alabama, 588 F.2d 436, 439 (5th Cir.1979).
“ ‘In Glasser v. United States, [315 U.S. 60, 92 (1942),] for example, the record showed that defense counsel failed to cross-examine a prosecution witness whose testimony linked Glas-ser with the crime and failed to resist the presentation of arguably inadmissible evidence. Id., at 72-75. The Court found that both omissions resulted from counsel’s desire to diminish the jury’s perception of a codefen-dant’s guilt. Indeed, the evidence of counsel’s “struggle to serve two masters [could not] seriously be doubted.” Id., at 75. Since this actual conflict of interest impaired Glasser’s defense, the Court reversed his conviction.’
“Cuyler v. Sullivan, 446 U.S. 335, 348-49, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
“In Schultz v. State, 481 So.2d 456 (Ala.Crim.App.1985), Schultz was indicted and convicted of possession of marijuana. Schultz argued on appeal from the denial of her petition for writ of error coram nobis that her trial attorney had ‘a real and actual conflict of interest in representing both her and her eo-defendant[, James Beck Wilson].’ Schultz v. State, 481 So.2d at 457. Illegal drugs were found in a vehicle in *1082 which Wilson and Schultz were both riding. Schultz asserted that she did not know that the drugs were in the car and that they belonged to Wilson. Their attorney, Mr. William Kominos, had represented Schultz in a civil matter ‘and Wilson and Kominos were close friends, having been roommates at one time.’ Schultz v. State, 481 So.2d at 457. Schultz and Wilson ‘met with Kominos on several occasions to discuss their respective cases’ and Kominos ‘was aware that the drugs found in the car were not hers but Wilson’s.’ . Schultz v. State, 481 So.2d at 457-58. Kominos advised Schultz not to testify on her own behalf, but told her she would be acquitted based on an illegal search and seizure of the vehicle. ‘Thus the appellant had no opportunity to explain the drugs or drug paraphernalia.’ Schultz v. State, 481 So.2d at 458. However, Kominos did not advise Wilson not to testify at his trial. ‘Wilson testified at his trial that the drugs found in the car were not his but, in fact, belonged to .. ¡ Schultz.’ Id. Schultz was sentenced: to 15 years’ imprisonment in the penitentiary and fined $10,000. Thus, she received the maximum sentence allowed ‘under the law without opportunity to present her defense.’ Schultz v. State, 481 So.2d at 459. While ‘[Wilson] received a similar sentence, he was only fined $1,000. He is no longer in custody.’ Schultz v. State, 481 So.2d at 459. Schultz ‘felt that [Kominos] had a close friendship with Wilson, which meant that' Mr. Ko-minos had a conflict of interest in representing her.’ Schultz v. State, 481 So.2d at 458. Citing Glasser and Zuck, this Court stated:
“‘If ah attorney owes duties to a party whose interests are adverse to those of one defendant, ah actual conflict exists, and the interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.....
[[Image here]]
“ ‘The proper judicial analysis in conflict of interest cases does not focus on the actual effect of the conflict on a particular defendant’s case but, rather, revolves around the judicial belief that the Sixth Amendment requires .that' a defendant may not be represented by counsel who might be tempted to dampen the ardor of his defense in order to placate his other client. See Zuck [v. Alabama, 588 F.2d 436 (5th Cir.1979)]. Further, when a conflict of interest, exists on the pari of the defendant’s counsel, there is. denial of the right to effective representation, even without showing specific prejudice. Castillo v. Estelle, 504 F.2d 1243 (5th Cir.1974); Zuck, supra; Pinkerton v. State, 395 So.2d 1080 (Ala.Crim.App.1980), cert. denied, 395 So.2d 1090 (Ala.1981); Jacques v. State, 409 So.2d 876 (Ala.Crim.App.1981); Sellers v. State, 460 So.2d 231 (Ala.Crim.App.1984).
“ ‘... [W]here, as here, a clear conflict of interest exists, the accused has, thus, been denied her Sixth Amendment right to the effective assistance of counsel as a matter of law. Pinkerton v. State, 395 So.2d 1080 [ (Ala.Crim.App.1980) ], cert. denied, 395 So.2d 1090 ([Ala.] 1981) and authorities therein cited. See also, United States v. Mers, 701 F.2d 1321 (11th Cir.1983).

U i f

“Schultz v. State, 481 So.2d at 458-59.”
Jones, 937 So.2d at 109-11 (emphasis added).’
*1083 Thus, if a Rule 32 petitioner demonstrates that an actual conflict of interest adversely affected his trial counsel’s performance, prejudice is presumed and “the accused has ... been denied [his] Sixth Amendment right, to the effective assistance of counsel as a matter of law.” Jones, supra.
As set out above, Ervin submitted several documents'to the circuit court as evidence to support his allegations, and Ervin’s evidence was" undisputed by the State. Based on those evidentiary submissions, the circuit court found that Ervin’s trial' counsel did,’ in fact, simultaneously represent both Ervin and Malone, who were charged as codefendants in the same robbery. The circuit court also found that Malone gave a statement to law-enforcement officers inculpating Ervin in the robbery. Additionally, although Malone inculpated Ervin in the robbery, Ervin’s trial counsel negotiated a consolidated plea agreement with the State oh' Ervin’s behalf, which encompassed both the robbery- and an apparently unrelated offense of unlawful distribution of a controlled substance. Pursuant - to that agreement, which was signed by Ervin, his trial counsel, and the prosecutor, Ervin pleaded guilty to third-degree robbery and to unlawful distribution of a controlled substance and was sentenced to concurrent 10-year sentences, which sentences were split with Ervin to serve 30 months’ imprisonment followed by 5 years’ probation.[5] Additionally, it was undisputed that, although Ervin’s trial counsel engaged in simultaneous representation of Ervin and Malone, Ervin’s trial counsel did not inform Ervin of the simultaneous representation or explain to him “the implications of the common representation and the advantages and ■ risks involved.” Rule 1.7(b)(2), Ala. R, Prof. Cond.- ■
Based on Ervin’s undisputed evidence, the circuit court, in its order granting Er-vin relief as to the robbery case, concluded that Ervin’s trial counsel’s simultaneous representation of both Ervin and Malone was an actual conflict of interest that adversely affected trial counsel’s performance and that, as a result, Ervin’s trial counsel had been ineffective. See Jones, supra. See also Lettley v. Maryland, 358 Md. 26, 45, 746 A.2d 392, 402-03 (2000) (“ ‘ “As a general rule, whenever one code-fendant makes a statement which is exculpatory or which -inculpatés a codefendant, they cannot-be represented by the same attorney because’ a conflict exists.”’”) (quoting Attorney Grievance Comm’n v. Kent, 337 Md. 361, 376-77, 653 A.2d 909, 917 (1995) (quoting John W. Hall, Jr., Professional Responsibility of the Criminal Lawyer § 13.27 (1987))). This conclusion is consistent vvith this Court’s decision in Jones and, as noted, is not challenged on appeal.
The circuit court, however, also concluded that, although Ervin’s trial counsel had had an actual conflict of interest as to the robbery case and was therefore ineffective in the robbery case, Ervin’s trial, counsel had had no actual conflict of interest as to the unlawful-distribution case and was therefore not ineffective in the unlawful-distribution case even though Ervin’s trial counsel’s representation in the unlawful-distribution case occurred at the same time as the representation in the robbery case and both cases were a part of a consolidated plea agreement. Consequently, the circuit court denied Ervin’s claim of ineffective assistance of counsel as to the unlawful-distribution case.
*1084 Thus, the question we must resolve in this case is whether trial counsel’s actual conflict of interest with regard to his representation of a client as to one offense— and the resulting ineffectiveness that arises from such a conflict — extends to another unrelated offense for which trial counsel also represents that same client at the time the conflict arises and trial counsel thereafter negotiates a plea agreement that encompasses both the offense giving rise to the conflict and the other unrelated offense. We hold that it does.
As explained above, trial counsel had an actual conflict of interest that adversely affected his performance with regard to the robbery case — a conclusion not challenged on appeal. Rule 1.7 and Rule 1.16, Ala. R. Prof. Cond., are clear: Although trial counsel may undertake simultaneous representation of codefendants, when doing so trial counsel, even if he reasonably believes that the representation will not be adversely affected, must advise the clients of the conflict and explain the “implications of the common representation and the advantages and risks involved.” Rule 1.7, Ala. R. Prof. Cond. If trial counsel fails to do so — as the undisputed facts of this case demonstrate — trial counsel has violated Rule 1.7, Ala. R. Prof. Cond., and must withdraw from representing those clients.
Neither Rule 1.7, nor Rule 1.16, creates an exception allowing trial counsel, despite a conflict of interest, to continue representing a client on an offense when, during the representation, there arises a conflict of interest in a case involving another offense. Those rules certainly do not create an exception, despite a conflict of interest, to enter into a consolidated plea agreement on behalf of the client, so long as the agreement also includes another, unrelated case, even where there is no apparent conflict of interest in the unrelated case. In other words, a violation of Rule 1.7 does not require trial counsel to withdraw from representing a client on a specific offense; rather, a violation of Rule 1.7 requires trial counsel to withdraw from representing the client without regard to the offense.
Applying the above-stated principle to this case, because Ervin’s trial counsel had an actual conflict of interest as to the robbery case, trial counsel could not then negotiate a plea agreement that encompassed both the robbery case, which gave rise to the conflict, and the apparently unrelated unlawful-distribution case. Rather, Ervin’s trial counsel was required to withdraw from representing Ervin. Consequently, under the circumstances in this ease, because the circuit court concluded that Ervin’s trial counsel’s simultaneous representation of Malone and Ervin in the robbery case created an actual conflict of interest and Ervin’s trial counsel negotiated a plea agreement on Ervin’s behalf encompassing both the robbery case and the unlawful-distribution case, the effect of Ervin’s trial counsel’s conflict of interest in the robbery case affected trial counsel’s representation of Ervin as to the unlawful-distribution case.
Indeed, in this case, the circuit court’s finding “[t]hat [Ervin] received adequate representation receiving a substantial reduction in the sentence ” in the unlawful-distribution case indicates that the plea in the unlawful-distribution case was inextricably intertwined with the plea in the robbery case. It is, from our standpoint, practically impossible to determine the role the robbery plea played in the consolidated plea bargain. There simply is no basis on which to conclude that, although Ervin’s trial counsel had an actual conflict of interest with regard to the robbery case, trial counsel could, at the same time, adequately represent Ervin in the unlaw *1085 ful-distribution case and negotiate a plea agreement on his behalf as to that offense.
To conclude otherwise would allow a lawyer who has “divided loyalties” in one case to represent a client in a different case in which there still may exist “divided loyalties” — even if such “divided loyalties” are not apparent. Simply because it does not appear that Malone was a codefendant in the unlawful-distribution case does not mean that “divided loyalties” do not exist. For example, if Ervin’s trial counsel withdrew from representing Ervin only in the robbery case because of a conflict of interest but was permitted to represent Ervin in the unlawful-distribution case and negotiate a plea agreement on Ervin’s behalf, Ervin’s trial counsel would have been required, at Malone’s trial, to impeach Er-vin’s credibility by using the guilty-plea conviction he had negotiated on Ervin’s behalf. In fact, because, under the above example, Ervin’s unlawful-distribution conviction could be used to impeach Ervin at Malone’s trial, to best represent Malone, Ervin’s trial counsel would have had an incentive to make sure Ervin pleaded guilty to the unlawful-distribution charge. Thus, although the unlawful-distribution case does not, on its face, demonstrate that Ervin’s trial counsel had “divided loyalties,” that does not mean that Ervin’s trial counsel had no “divided loyalties” in the unlawful-distribution case. Cf. Yarbrough v. Mississippi 139 So.3d 143 (Miss.Ct.App.2014) (Maxwell, J., specially concurring) (“[E]ven though there is not the slightest objective hint that Yarbrough’s attorney pulled any punches, I agree with the majority that we must reverse. Under Kiker [v. Mississippi 55 So.3d 1060 (Miss.2011),] the admitted lack of warning to Yarbrough about the potential downside of dual representation (even if none is perceived by the defense attorney) requires that we find per se actual conflict of interest that Yarbrough had not knowingly and intelligently waived. Kiker, 55 So.3d at 1067 (¶ 19). And this is seemingly so even though the attorney had disclosed to Yar-brough that the officer was one of his clients, and there is no actual objective showing of prejudice.”).
Accordingly, because the effect of trial counsel’s actual conflict of interest extended to the entire guilty-plea proceeding, trial counsel’s ineffectiveness likewise extended to the entire guilty-plea proceeding. See Jones, supra,

Conclusion

We hold that, when trial counsel has an actual conflict of interest that is not remedied by following the mandates of Rule 1.7, Ala. R. Prof. Cond., and the effect of that conflict rises to the level of ineffective assistance of counsel, trial counsel must withdraw from representing that client altogether. See Rule 1.16, Ala. R. Prof. Cond. Trial counsel certainly cannot continue representation of that client for the purpose of entering into a plea agreement that encompasses both the offense giving rise to the actual conflict and another unrelated offense. When trial counsel has an actual conflict of interest, which is not subsequently remedied by following Rule 1.7, Ala. R. Prof. Cond., the impact of that conflict and its resulting ineffectiveness extends to all offenses for which trial counsel was actively representing the client at the time the conflict arose. Consequently, the circuit court erred when it concluded that Ervin’s trial counsel’s conflict of interest and ineffectiveness did not also extend to Ervin’s distribution conviction.
Accordingly, the judgment of the circuit court denying Ervin’s claim of ineffective assistance of counsel as to his unlawful- *1086 distribution conviction is reversed, and this case is remanded to the circuit court for further proceedings cpnsistent with this opinion.
APPLICATION OVERRULED; OPINION OF MARCH 13, 2015, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
WELCH and BURKE, JJ., concur.
WINDOM, P.J., and KELLUM, J., dissent.

. Ervin was previously represented by George Jones’ III, who "had voluntarily given up his license to practice law.’,’ (C. 22.)

. The State, in its brief on return to remand, argues that an additional remand is required because, the State says, the circuit court failed to "conduct an evidentiary hearing” and therefore failed to comply with this Court's instructions in the remand order. The State’s assertion, however, is incorrect. As noted, the circuit court, on remand, issued an order requiring both Ervin and the State to submit evidence by way of affidavit, interrogatories, or depositions. Rule 32.9(a), Ala. R.Crim. P., expressly authorizes the circuit court to take evidence by way of affidavit, interrogatories, or depositions, "in lieu of an evidentiary hearing.” Thus, the circuit court did, in fact, comply with our instructions, and an additional remand is not required for the circuit court to "conduct an evidentiary hearing,"

. Although the circuit court issued two separate orders, as explained above, Ervin pleaded guilty to and was sentenced for both third-degree Vobbery and unlawful distribution of a controlled substance during the same proceeding, Thus, Ervin's petition does not challenge "multiple judgments entered in more than a single< ... guilty-plea proceeding.” Rule 32.1, Ala. R.Crim. P.

. Although the State, in its appellee's brief on return to remand, disagrees with the circuit court’s judgment granting Ervin relief as to his third-degree-robbery conviction, we question, for at least two reasons, whether the State's argument is properly before this Court for appellate review.
First, we question whether the State, as the appellee in this matter, can, in its brief on return to remand, seek reversal of the circuit court's judgment without filing either a notice of appeal or a cross-appeal challenging the circuit court’s judgment as to Ervin’s third-degree-robbery conviction. See Rule 32.10, Ala. R.Crim. P. See generally McNabb v. State, 991 So.2d 313, 317 (Ala.Crim.App.2007) ("[I]t is well settled that ‘new issues may not be raised for the first time in a reply brief.’ McCall v. State, 565 So.2d 1163, 1167 (Ala.Crim.App.1990). 'As a general rule, issues raised for the first time in a reply brief are not properly subject to appellate review.’ Ex parte Powell, 796 So.2d 434, 436 (Ala.2001).’’)..
It is well-settled that "[t]he only jurisdictional prerequisite for an appeal is the timely filing of a notice of appeal.” Dunning v. New England Life Ins. Co., 890 So.2d 92, 96 (Ala.2003) (citing Edmondson v. Blakey, 341 So.2d 481, 484 (Ala.1976), and Committee Comments to Rule 3, Ala. R.App. P. ("Timely filing of the notice of appeal is a jurisdictional act. It is the only step in the appellate process which is jurisdictional.”)). To state it another way, to challenge an adverse ruling — which the State appears to be attempting to do in its brief on return to remand — the aggrieved party must file a timely notice of appeal in the appropriate appellate court. Until that notice of appeal is filed, the appellate court does not have jurisdiction to a'ddress the aggrieved party’s concerns.
Here, the circuit court’s judgment granting Ervin relief as to his third-degree-robbery conviction was a new judgment adverse to the State. The State, as the aggrieved party, has the right, under Rule 32.10, Ala. R.Crim. P., to file a written notice of appeal challenging that'judgment. The State, however, failed to do so. Consequently, the State did not properly invoke the jurisdiction of this Court to review any adverse judgment of the circuit court.
Additionally, the State, in its application for rehearing, contends that it was not required to file a separate notice of appeal or a cross-appeal to challenge the circuit court’s judgment. The State, however, cites no authority for its argument on application for rehearing. Thus, the State failed to demonstrate that this Court’s judgment was incorrect.
As for the second reason, even if the State’s argument were properly before this Court, we question whether the State’s argument satisfies the requirements of Rule 28(a)(10), Ala. R.App. P. In expressing its disagreement with the circuit court, the State, in its brief on return to remand, cites only a general'proposition of law and'makes a'bare allegation that Ervin failed to prove an actual conflict of interest with regard to the third-degree-robbery conviction. See, e.g., McNabb v. State, 991 So.2d 313, 316 (Ala.Crim.App.2007) (recognizing that " ‘[a]uthority supporting only "general propositions of law” does not constitute a sufficient argument for rever•sal[,]’ Beachcroft Props., LLP v. City of Alabaster, 901 So.2d 703, 708 (Ala.2004), quoting Geisenhoff v. Geisenhoff, 693 So.2d 489, 491 (Ala.Civ.App.1997)").
Because the State’s argument is not properly before this Court, we do not address the propriety of the circuit court’s judgment as to Ervin’s trial counsel’s conflict of interest in the third-degree-robbery conviction.

. The State also agreed to dismiss' a third charged offense; unlawful possession of a controlled substance. (Record on Return to Remand, C. 18.)